### CHARLES JACKSON LANKFORD V. STATE.

No. 25303. May 16, 1951.

Hon. Joe B. Brown Judge Presiding.

*Irwin & Irwin* by *Robert C. Benavides,* Dallas, for appellant.

*Henry Wade,* District Attorney, *Charles S. Potts,* Assistant District Attorney, Dallas, and *George P. Blackburn,* State' Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appellant was on the 9th day of November, 1950, charged by complaint and information in the County Criminal Court of Dallas County, Texas, with the offense of establishing, keeping and exhibiting a lottery.

Thereafter, to-wit: on the 12th day of December, 1950, this cause was tried to a jury, and on the 13th day of December, 1950, the jury found appellant guilty as charged and assessed the maximum penalty of One Thousand ($1,000.00) Dollars fine.

Previous to the filing of the complaint the vice squad officers of the city of Dallas went to a place called "The Scorpion's Den" where they observed appellant and others as they participated in a certain drawing. The officers testified that at the conclusion of this drawing they placed appellant under arrest and took charge of nineteen ledger books, together with other matter including business cards bearing the names of "Lankford, Freeman & Terry Advertising Agency."

Prior to this date the officers had witnessed other drawings by the same parties, conducted in the same manner at other places, described generally as beer joints, dance halls, etc. The evidence developed the fact that these men were conducting what they denominated an advertising agency under the title "Telequiz." They had nineteen subscribers in the city of Dallas who paid to them $15.00 each per week. Of this amount, $100.00 was set aside as a prize to the person whose name was drawn. Each of the subscribers collected, by some process not fully explained, the names of customers. Each name was listed in a book and given a number which was placed in a "capsule." These were deposited in a "squirrel cage," a container in which they were stirred and mixed, and at a stated time a number was drawn in the presence of the assembled crowd. If the person was present, either at the place of drawing or at one the other subscribers' place of business, that individual was to receive $100.00. If no one at the place of the drawing received the money the name of the person with the lucky number was telephoned to the other places. If no one was present at either place having that number then the $100.00 for that week was added and accumulated the prize to that extent for the following week. At the particular time in question this prize money had accumulated to $900.00.

The foregoing is a sufficient summary of the facts as proven upon the trial, and sufficiently sustains the jury's verdict of guilty.

The most serious contention made by appellant in this appeal relates to the concluding argument of the assistant district attorney. Appellant did not testify in the case. It is complained that in his argument the attorney referred to defendant's failure to testify by the use of the following language: "But the audacity of a man that will come up and admit all of the facts that prove him guilty and stand up in court and plead not guilty to the charge. Fantastic! If I had done it, if I had done it, I would

come up here and say: 'Yes, I did it. I did it. But I did not think I was doing anything wrong. Have mercy on me.' That is what I would do."

We can give no other construction to this language than that he was referring to the failure of the defendant to testify. It is equivalent to saying: "If I were in his place— if I had done as he did, or if I were claiming the defense that he claims, and did not think I was doing anything wrong I would come here and ask for mercy." Steele v. State, 134 Tex. Cr. Rep. 620, 117 S.W. 2d 74.

The careful trial court readily recognized the error in the argument, sustained appellant's objection to it and instructed the jury not to consider it. This is all he could have done.

Article 710 of the Code of Criminal Procedure, prohibiting any reference to or comment upon the failure of the defendant to testify, is mandatory and a violation of it cannot generally be construed to be cured by an instruction from the court, whatever that instruction may be. See Scarbrough v. State, 98 Tex. Cr. R. 54, 263 S.W. 917, in which Judge Morrow said:

"It has often been said that the statute is mandatory and its obedience imperative. When counsel has transgressed it and the matter is brought before this court for review its duty is clear, and the responsibility of a reversal must rest upon the prosecution."

Other bills of exception complain of matters which will probably not occur in another trial. For the error in the argument, the judgment of the trial court is reversed and the cause is remanded.