sarringar v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-102-CR

WILLIAM ARDIS SARRINGAR a/k/a APPELLANT

COREY D. REYNOLDS 

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant William Ardis Sarringar, also known as Corey D. Reynolds, of aggravated robbery with a deadly weapon and sentenced him to life imprisonment.  In addition, the jury assessed a $10,000 fine.  Appellant brings four points on appeal, challenging the legal and factual sufficiency of the evidence, the denial of his motion for new trial, the denial of his motion for mistrial after an allegedly improper closing argument by the State, and the admission of extraneous offense evidence at punishment.  Because we hold that the trial court did not reversibly err, we affirm the trial court’s judgment.

SUMMARY OF THE FACTS

Complainant Michael Swain testified that early one morning before work,  he was accosted by Appellant and one other person at his workplace.  Complainant stated that Appellant and his cohort forced him at gunpoint and upon threat of death to go to an ATM, withdraw money, and give it to Appellant, who then fled.  Surveillance films at Complainant’s workplace and at the ATM site showed a firearm in view during the robbery.  On the same day as the incident, Complainant identified Appellant from a photospread.  Additionally, defense counsel stipulated that Appellant appeared in pictures taken by the security cameras at the ATM machine and at the entrance to Complainant’s building.  Defense counsel stated, “The only issue in this case is whether or not a firearm was used.”

Complainant testified that the firearm could be seen in the various surveillance films, which were admitted into evidence.  Complainant also testified that he struggled with Appellant for the gun and would have been killed had the safety not been engaged.  Detective James Desmarais testified that during his investigation of the case, Appellant admitted the robbery but denied that a firearm was used or possessed during the course of the robbery.

LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

Appellant argues that the evidence is legally and factually insufficient to support the jury’s verdict because, he claims, he did not possess, use, or exhibit a firearm during the robbery.
  
Applying the appropriate standards of review,
(footnote: 2) we hold that the evidence is both legally and factually sufficient to support the verdict.  Complainant’s testimony alone provided ample evidence that Appellant used a firearm.  Additionally, Appellant, during questioning by Desmarais, volunteered that he did not have a gun.  He volunteered this information despite the fact that Desmarais had never mentioned any weapons being involved.  Appellant also told Officer Royce Hearne, “I’m not going to say I had a gun because that’s ag robbery.”  We overrule Appellant’s first point on appeal.

MOTION FOR NEW TRIAL

In his second point, Appellant argues that the trial court reversibly erred in denying his motion for new trial.  Appellant filed a timely motion for new trial that was overruled by operation of law.  The decision to grant or deny a motion for new trial lies within the discretion of the trial court.
(footnote: 3)  An abuse of discretion will be found only when the trial judge’s decision was so clearly wrong as to lie outside the zone of reasonable disagreement.
(footnote: 4) 

The State argues that the motion for new trial was never presented to the trial judge.
(footnote: 5)  The motion contained a “certificate of presentment” signed by trial counsel.  The “acknowledgment of presentment of motion” was never signed by the trial judge, although the motion contained a signature line for that purpose.  Thus, the record does not reflect that the motion was ever presented to the trial court.

Even if the motion was presented to the trial judge, as trial counsel asserts in his certificate, the grounds raised in the motion for new trial were that the verdict was contrary to the law and the evidence and that:  1) the evidence was factually insufficient; 2) the trial court erred in refusing to admit a written statement by Andre Russ, who claimed that Appellant had angrily complained to him that the police were accusing him of having used a gun; and 3) the trial court erred in allowing the State to introduce extraneous offense evidence when the State did not timely respond to Appellant’s timely request for notice of intent to introduce such evidence.  In appealing the denial of his motion for new trial, however, Appellant challenges only the trial court’s failure to find the evidence factually insufficient to support the jury verdict, based on the alleged absence of the gun.  In addressing Appellant’s first point, we have already held that the evidence is factually sufficient to support the jury’s verdict.  Appellant does not argue that the trial court erred in failing to grant the motion for new trial on the remaining grounds.  Any complaint regarding the denial of the motion for new trial based on those grounds is therefore waived.
(footnote: 6)  Consequently, we overrule Appellant’s second point on appeal.

JURY ARGUMENT

In his third point, Appellant contends the trial court erred in denying his motion for mistrial.  During the State’s final argument at the punishment phase of the trial, the prosecutor argued: 

But the defense has the same subpoena power as the State, and if there were witnesses that could testify about the contributions he’s made in a positive way to the society, those attorneys could bring --

Appellant objected that the argument was a comment on Appellant’s failure to testify, and the trial court sustained the objection and instructed the jury to disregard the argument.  The trial court, however, denied Appellant’s motion for mistrial.  The trial court’s denial of a motion for mistrial is reviewed under an abuse of discretion standard.
(footnote: 7)  As the State points out, there was once a presumption that an instruction to disregard generally would not cure a comment on the failure of the accused to testify.
(footnote: 8)  And, as the State also points out, the Texas Court of Criminal Appeals has stated that the presumption has “been eroded to the point that it applies only to the most blatant examples.  Otherwise, the Court has tended to find the instruction to have force.”
(footnote: 9)  

“[C]urative instructions are presumed efficacious to withdraw from jury consideration almost any [objectionable] evidence or argument.”
(footnote: 10)  Again, as the State points out, whether the denial of the motion for mistrial was error depends on whether the curative instruction did in fact cure the harm, if any,  created by the allegedly improper argument.
(footnote: 11)
 Nothing in the record before us suggests that the trial court’s instruction to disregard was not effective to cure any harm created by the allegedly improper argument.  We overrule Appellant’s third point on appeal.

EXTRANEOUS OFFENSE EVIDENCE

In his fourth point on appeal, Appellant argues that the trial court abused its discretion in allowing the State to introduce extraneous offense evidence at the punishment hearing over Appellant’s objection that he had not received timely notice of the State’s intent to do so.  Appellant argues that before beginning the punishment phase of the trial, Appellant objected to the State’s failure to give timely notice of its intent to offer extraneous offense evidence.  In support of his objection, defense counsel Morgan Minton stated that he had prepared, filed, and served a copy of the request upon State’s counsel.  An employee of the district attorney’s office stated that she had filed the State’s response to the request for notice at the direction of the prosecutors in the case and then had faxed a copy of the response to defense counsel.  Mr. Minton’s co-counsel testified that although he had been made aware of the State’s notice of intent to offer extraneous offense evidence, he and Minton had prepared the defense of the case from the standpoint that the State would not offer such evidence because the response to the request had not been timely.  The notice was filed on the day before jury selection began.  The State informed the trial court that its notice had been faxed to the defense on the day it was filed, but the defense did not receive it.  The State provided the response to the defense in the courtroom immediately before jury selection began.

The notice requirement governing extraneous offense evidence offered at the punishment hearing provides:

On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence.  If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act.  The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.
(footnote: 12)

Texas Rules of Evidence Rule 404(b) provides in pertinent part: 

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes . . . provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State’s case-in-chief such evidence other than that arising in the same transaction.
(footnote: 13)

The State argues that there was no surprise and that therefore the evidence was properly admitted, or, alternatively, that its admission was harmless.  The State concludes that there was no surprise because Minton, at the time of trial in this case, was representing Appellant in all the extraneous offenses admitted into evidence at punishment.  The State also points out that because Appellant received the State’s notice of intent to offer the evidence on March 13, the day of jury selection, and no testimony was offered until March 19, defense counsel had six days to prepare to defend against that evidence.  The State argues that six days is ample time to mount such a defense, and thus no harm resulted from the late notice.  

Contrary to the State’s contentions, the first day of trial is generally not an appropriate time to provide notice of intent to offer evidence of extraneous offenses.
(footnote: 14)  
“The purpose of the notice provision is to adequately apprise the defendant of the extraneous conduct the State intends to introduce at trial so the defendant can prepare for same.”
(footnote: 15)  
The time demands of a jury trial do not permit time for investigation.  And, as the State candidly admits, the notice request was filed on February 1, almost six weeks before notice was finally provided. 

We also disagree with the State’s contention that knowledge of the existence of extraneous offenses equates to knowledge of the State’s intention to offer evidence of them.  We have previously held that “[t]he purpose of article 37.07, section 3(g) is to avoid unfair surprise, that is, trial by ambush.”
(footnote: 16)  Article 37.07, section 3(g) mandates that the State provide timely notice, not of the existence of extraneous offenses, but of its intent to offer such evidence.
(footnote: 17)  The fact that Appellant’s trial counsel knew of Appellant’s pending cases because he represented Appellant on those cases did not give either Appellant or trial counsel notice that the State intended to offer those extraneous acts into evidence.  Article 37.07, section 3(g) is clear and unambiguous.  Notice must be provided in a timely manner and in advance of trial.  We have held that jury selection is an integral part of a jury trial.
(footnote: 18)  Notice must therefore be given before trial in a timely manner, and if it is not given until jury selection, it is not timely.
(footnote: 19)  

At trial, however, prosecutor Haines stated: 

I would like to state for the record in conclusion with our discussion this morning with defense motions, whether or not they were received by any State prosecutor, I received this file several weeks before trial.  All of the cases involving William Sarringar, AKA Corey Reynolds, felonies and one single misdemeanor case, and in none of those files or any place have I recovered any sort of motions from the defense counsel, so I would like to note on record as an officer of the [c]ourt that I’m saying under oath we did not receive any defense motions. 

Thus there was evidence before the court that the defense had not made a request for the notice.  Decisions of the trial court to admit or exclude evidence are subject to review for abuse of discretion.
(footnote: 20)  The trial court determined the credibility of the evidence and was free to believe Haines’s sworn statement that the State did not receive the request for notice of intent to offer evidence of extraneous offenses.
(footnote: 21)  This determination would have been reasonable because defense counsel testified that he had no independent recollection of delivering the request to the State, despite the fact that the request contained his signed certificate of service and that it was his custom and practice to deliver documents if he filled out the certificate of service.

Additionally, under these specific facts, the delay between jury selection and the beginning of testimony provided a reasonable amount of time for investigation and preparation regarding the extraneous acts listed in the State’s notice. Appellant does not argue that knowledge of the State’s intent to offer the extraneous offenses would have affected his conduct of voir dire.  In light of the specific circumstances of this case, we hold that the trial court did not abuse its discretion.  We overrule Appellant’s fourth point on appeal.

CONDUCT OF COUNSEL 

We commend counsel for both the State and the defense for exhibiting the highest standards of professional courtesy in their briefs in the case now before us.  Counsel for both the prosecution and the defense scrupulously avoided any suggestion of impropriety of opposing counsel and went to great lengths to ensure that this court did not misconstrue any statement as criticism of the integrity of opposing counsel.  We would, however, have appreciated more specific record citations from Appellant’s counsel, as well as pinpoint citations.
(footnote: 22)  

Having overruled Appellant’s four points on appeal, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b) 

[DELIVERED: MARCH 6, 2003]

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See Emery v. State
, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994) (providing legal sufficiency standard of review), 
cert. denied
, 513 U.S. 1192 (1995);
 Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992) (same), 
cert. denied
, 507 U.S. 975 (1993); 
Johnson v. State
, 23 S.W.3d 1, 7, 9, 11-12 (Tex. Crim. App. 2000) (providing factual sufficiency standard of review);
 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (same).

3:
Lewis v. State
, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

4:
Cantu v. State
, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 926 (1993);
 Montgomery v. State
, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

5:
See
 
Tex. R. App. P.
 21.6.

6:
See Butler v. State
, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1157 (1995); 
Rezac v. State
, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

7:
Wood v. State
, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

8:
See, e.g.
, 
Lankford v. State
, 156 Tex. Crim. 113, 239 S.W.2d 394, 395  (1951).

9:
Moore v. State
, 999 S.W.2d 385, 405-06 (Tex. Crim. App. 1999) (quoting 
Waldo v. State
, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988)), 
cert. denied,
 530 U.S. 1216 (2000).

10:
Bauder v. State
, 921 S.W.2d 696, 699-700 (Tex. Crim. App. 1996).

11:
See Faulkner v. State
, 940 S.W.2d 308, 315 (Tex. App.—Fort Worth 1997, pet. ref’d) (op on reh’g) (en banc).

12:
Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(g) (Vernon Supp. 2003). 

13:
Tex. R. Evid.
 404(b).

14:
Umoja v. State
, 965 S.W.2d 3, 7 (Tex. App.—Fort Worth 1997, no pet.) (op. on reh’g) (holding notice on day of trial untimely); 
see
 
Hernandez v. State
, 914 S.W.2d 226, 234 (Tex. App.—Waco 1996, no pet.) (holding notice provided on Friday before trial on Monday untimely). 

15:
Umoja
, 965 S.W.2d at 7.

16:
Nance v. State
, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref’d).

17:
Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(g). 

18:
Watson v. State,
 917 S.W.2d 65, 67 (Tex. App.—Fort Worth 1996, pet. ref’d). 

19:
Umoja
, 965 S.W.2d at 7.

20:
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert
. 
denied,
 520 U.S. 1200 (1997).

21:
See Bonham v. State
, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), 
cert. denied
, 474 U.S. 865 (1985).

22:
See
 
Tex. R. App. P.
 38.1(h).